**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-4943**

---

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff - Appellee,

　　　v.

STEVEN F. RIGGS, II,

　　　　　　　Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap.   James P. Jones, District Judge.  (2:10-cr-00002-JPJ-PMS-4)

---

Submitted:  June 18, 2012　　　　　Decided:  August 17, 2012

---

Before GREGORY, AGEE, and FLOYD, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Timothy W. McAfee, TIMOTHY W. MCAFEE, PLLC, Norton, Virginia, for Appellant.  Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, Albert P. Mayer, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Steven F. Riggs appeals his 210-month sentence and six-year term of supervised release after pleading guilty to conspiracy with intent to distribute OxyContin (oxycodone) or its equivalents in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846 (2006). Riggs contends that: (1) the Drug Equivalency Tables in U.S.S.G § 2D1.1 are arbitrary and capricious and unconstitutional; (2) the district court abused its discretion by denying his motion to withdraw his plea of guilty; (3) the district court's finding as to his attributable drug weight for sentencing purposes was erroneous; (4) the district court's finding that Riggs managed or supervised another participant for sentencing purposes was erroneous; and (5) the district court's findings with respect to Riggs's prior criminal history for sentencing purposes were erroneous.

For the reasons that follow, we affirm the district court's sentence.

I.

Riggs first asserts that the Drug Equivalency Tables in U.S.S.G. § 2D1.1 have no rational basis and to sentence a person according to the conversions is a violation of due process. This Circuit has previously held that the Drug Equivalency Tables in U.S.S.G. § 2D1.1 are valid and do not

2

violate the Constitution. See United States v. Bayerle, 898 F.2d 28, 32 (4th Cir. 1990). That decision is binding, and Riggs's argument to the contrary is without merit.

## II.

Riggs next contends that the district court's denial of his motion to withdraw his guilty plea constitutes an abuse of discretion. It is well-established that once the district court has accepted a guilty plea, it is within the district court's discretion whether to grant a motion to withdraw it. Fed. R. Crim. P. 11(d)(2)(b). In deciding such a motion, the key factor is whether the Rule 11 hearing was properly conducted. United States v. Bowman, 348 F.3d, 408 414 (4th Cir. 2003). If the Rule 11 proceeding is adequate, then a strong presumption attaches that the plea is final and binding. United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992). The court also considers six additional factors:

> (1)whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether the withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000) (citing United States v. Moore, 931 F.2d 245, 248 (4th Cir.

3

1991)).  The movant bears the burden of demonstrating that withdrawal should be granted.  United States v. Dyess, 478 F.3d 224, 237 (4th Cir 2007).

Here, the district court conducted a thorough guilty plea hearing in compliance with Fed. R. Crim. P. 11, ensuring that Riggs understood:  his rights to plead not guilty, have a jury trial, and be represented by an attorney; his trial rights to confront and cross-examine witnesses, be protected from compelled self-incrimination, testify and present evidence, and compel the attendance of witnesses; that he waived his trial rights if he pled guilty; the nature of the charge to which he was pleading guilty; the maximum possible and mandatory minimum penalties as a result of his plea, including imprisonment, fines, supervised release, and special assessments; and that the court would consider not only the statutory provisions but also sentencing guidelines and other sentencing factors in determining his sentence.  The court also ensured that his guilty plea was voluntary, and that there was a factual basis for the plea.

Riggs affirmed that he had been over the indictment with his counsel and that he had an opportunity to review and discuss the charges with his attorney.  Riggs also stated that he was satisfied with his lawyer's representation.  When asked if "anyone attempted in any way to force [him] to plead guilty,"

4

Riggs answered, "I wouldn't say I had been forced to plead guilty, but I believe it's in my best interests to." Riggs further stated that he did not dispute or contest any of the facts represented by the government and admitted at the hearing that he sold some of the drugs.

Because the district court conducted a thorough guilty plea hearing in compliance with Fed. R. Crim. P. 11 and the relevant factors weigh against Riggs's motion to withdraw his guilty plea, we cannot say that the district court abused its discretion by denying Riggs's motion to withdraw his guilty plea.

III.

Riggs next argues that the district court erred in calculating the quantity attributable to him for purposes of calculating his base offense level for sentencing. A person convicted of conspiracy to distribute controlled substances "is accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity the he jointly undertook." U.S.S.G. § 1B1.3 (2009).

In United States v. Bell, this Court considered a conspiracy to distribute oxycondone in which one of the

5

participants, Bell, had a legitimate prescription for some of the pills she sold and also claimed that she retained some drugs for personal use. 667 F.3d 431, 442 (4th Cir. 2011). There, this Court reaffirmed the proposition that where a defendant has been convicted of conspiracy, drugs retained by the defendant for personal use are considered "contraband with which he was directly involved" and therefore "relevant conduct" for sentencing purposes. Bell, 557 F.3d at 422. Under Bell, all of the drugs Riggs handled or that were obtained on his trips to Florida are properly attributable to him, and the district court therefore did not err in including those amounts in its calculations.

Moreover, in compliance with United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009), the district court performed an individualized assessment of the evidence against Riggs, on the record, and attributed to Riggs only those quantities that were confirmed by witnesses who appeared at the sentencing hearing. The district court further noted that the estimate the court used was "very conservative" in light of the testimony at the hearing. As such, the district court's attribution to Riggs of the drugs he handled and obtained was not clearly erroneous.

IV.

Riggs next contends that the district court erred by increasing his base offense level for being a manager or supervisor. A defendant qualifies for the adjustment if he managed or supervised one or more other participants. U.S.S.G. § 3B1.1(b), cmt. 2. A "participant" is a person who is criminally responsible for the commission of the offense and the person need not be indicted or convicted. See id., cmt. 1. The indictment in this case charges Riggs with conspiring with his co-defendants and "others, known and unknown to the grand jury."

The evidence presented supports the finding that Riggs introduced participants to his system, exercised control over them as they accompanied him to Florida, and had plenary authority over the terms of the trips. It was therefore not clearly erroneous for the district court to agree with the PSR's recommendation that Riggs was a manager or supervisor with respect to his offense, and to increase his offense level accordingly, pursuant to U.S.S.G. § 3B1.1(b).

V.

Finally, Riggs's various arguments concerning the district court's treatment of criminal convictions from his past are likewise without merit. The PSR calculated and the district court adopted a criminal history score of twenty-one for Riggs.

Accordingly, Riggs was placed into criminal history category VI. This category applies wherever thirteen or more points are assigned. U.S.S.G. Chapter 5, Part A. Thus, the sentencing range the district court used would not be impacted unless Riggs's criminal history score were reduced by nine or more points.

The crux of Riggs's argument is based on the premise that twelve of his prior convictions -- those reflected in paragraphs 109, and 112-13, of the PSR -- should not have been included in the computation of Riggs's criminal history category because they qualify as "relevant conduct" to his instant conspiracy offense. We disagree.

Only Riggs himself attempted to connect these offenses to the conspiracy, and then only at the sentencing hearing, when he had a motive to do so. Moreover, none of the offenses that Riggs seeks to connect to the conspiracy occurred along the route to Florida and instead each occurred locally in Kentucky, Tennessee, or Virginia. Based on the totality of the evidence, the district court was not required to believe Riggs's testimony, and did not err by rejecting it. See United States v. Thompson, 554 F.3d 450, 452 (4th Cir. 2009).

VI.

For the reasons set forth above, we affirm the district court's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

<u>AFFIRMED</u>